599 S.E.2d 689

**GENESIS, INC., Petitioner Below, Appellant,**

v.

**TAX COMMISSIONER OF THE STATE OF WEST VIRGINIA, Respondent Below, Appellee.**

**No. 31692.**

Supreme Court of Appeals of West Virginia.

Submitted: June 8, 2004.

Filed: June 28, 2004.

Andrew G. Fusco, Jeffrey A. Ray, Morgantown, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Stephen Stockton, Senior Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM.

Genesis, Inc. ("Genesis") appeals from the June 17, 2003, order of the Circuit Court of Monongalia County which affirmed the administrative decision issued by the Appellee West Virginia Tax Commissioner ("Tax Commissioner") upholding the assessment of an excess severance tax and a use tax against the taxpayer. Genesis challenges the lower court's ruling on the grounds that the record in this case does not support the conclusion reached by the administrative law judge to assess the taxes at issue in this matter. Upon our full review of the record submitted, we agree with the taxpayer and, accordingly, reverse.

## I. Factual and Procedural Matter

Genesis, who is engaged in the business of severing or otherwise producing coal for sale in this state, was issued an assessment by the Auditing Division of the West Virginia Tax Department on December 28, 1995. The assessment was for excess severance taxes for the period of January 1, 1992, through

December 31, 1994, in the amount of $127,823 plus interest of $24,159 for a total amount of $151,982. There was also an assessment of use taxes for the period of January 1, 1993, through December 23, 1994, in the amount of $34,728 plus interest of $5,847 for a total amount of $40,575. Upon its receipt of these assessments, Genesis timely filed a petition for reassessment.[1]

An administrative hearing was held on October 7, 1996, and the Tax Commissioner, by decision dated July 20, 1998, affirmed the assessments at issue for the excess severance tax and the use tax. Genesis timely appealed that ruling to the circuit court and by order dated June 17, 2003, the circuit court upheld the Tax Commissioner's ruling. Through this appeal, Genesis seeks a reversal of the trial court's decision to affirm the Tax Commissioner's ruling.

## II. Standard of Review

■ Like the circuit court's review of this administrative matter, our rule is governed by the factors set forth in West Virginia Code § 29A–5–4 (1998) (Repl.Vol.2002). In syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), we explained:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a)[2] and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded

deference unless the reviewing court believes the findings to be clearly wrong. *Id.* at 590, 474 S.E.2d at 520 (footnote added). Applying this standard to a lower court's decision to affirm an administrative decision, we held in syllabus point one of *Wheeling–Pittsburgh Steel Corp. v. Rowing,* 205 W.Va. 286, 517 S.E.2d 763 (1999): "Under the West Virginia Administrative Procedures Act, W. Va.Code ch. 29A, appellate review of a circuit court's affirmance of agency action is *de novo*, with any factual findings made by the lower court in connection with alleged procedural defects being reviewed under a clearly erroneous standard."

With these standards in mind, we proceed to determine whether the lower court committed error in affirming the Tax Commissioner's assessment of excess severance and use taxes against Genesis.

## III. Discussion

### A. Related Parties

At the center of the Tax Commissioner's position with regard to the taxes at issue is its contention that Genesis and Crownco, Inc., the entity to whom it initially sold the coal subject to the severance tax[3] at issue, are "related parties" for purposes of this state's tax laws. Under state regulations governing taxation, parties are viewed as "related" where there are "two or more persons, organizations or businesses owned or controlled directly or indirectly by the same interests."[4] W.Va. R. *Taxation* 110 § 13A–

---

1. *See* W.Va.Code § 11–10–8 (2002) (Repl.Vol. 2003).

2. Under the provisions of West Virginia Code § 29A–5–4(g), reversal, vacation, or modification of an administrative decision is sanctioned when an individual's rights have been substantially prejudiced as a result of a ruling that is:

    (1) In violation of constitutional or statutory provisions; or
    (2) In excess of the statutory authority or jurisdiction of the agency; or
    (3) Made upon unlawful procedures; or
    (4) Affected by other error of law; or
    (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
    (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

3. Under state law, a severance tax is imposed upon:

    > every person exercising the privilege of engaging or continuing within this State in severing, extracting, reducing to possession and producing for sale, profit or commercial use any natural resource product or products ... in the amount to be determined by the application of rates against the gross value of the articles produced, as shown by the producer, except as otherwise provided ....

    W.Va. R. *Taxation* 110 § 13A–3.1.

4. Under this same regulation, the concept of control is defined to "exist[] if a contract or lease, either written or oral, is entered into whereby one party mines or processes natural resources owned or held by another party and the owner or lessor participates in the severing, processing or marketing of the natural resources or receives any value other than an arm's length

2.14. The significance of a "related parties" finding is that it allows the Tax Commissioner to look beyond the declared gross value[5] of the natural resources subject to the severance tax and to apply differing rules for determining the value of the sale for purposes of levying a severance tax. *See* W.Va. R. *Taxation* 110 § 13A–2.14 (permitting Tax Commissioner to "apportion or allocate the receipts between or among such [related] persons, organizations or businesses if he determines that such apportionment or allocation is necessary to more clearly reflect gross value"); W.Va. R. *Taxation* 110 § 13A–2a.6 (identifying alternate methods for determining gross value for sales involving "related parties").

To understand the Tax Commissioner's position, it is necessary to describe the chain of sales that transpired with regard to the coal upon which the subject taxes were assessed. Genesis, as the initial seller of the coal at issue, sold coal to Crownco. Crownco then sold that same coal to Continental Coal Sales Corp. ("Continental"), who then added some of its own coal to the mix and sold the combined lot to Monongahela Power Company ("Mon Power"). Also helpful to this discussion is knowledge of the fact that as a result of bankruptcy proceedings,[6] Crownco was assigned the rights and interests formerly held by Continental with regard to certain amended agreements under which Continental supplied coal to Mon Power.

In addition to the transactions outlined above, discussion of this matter requires an understanding of the various interests involved in connection with the operation of Genesis; Crownco, Inc.; and an entity known as Crownco Partnership. With regard to Genesis, the record in this case indicates that Milan Puskar owns 25% of that corporation; John Hardesty owns 9%; and the remaining interests are owned by eight other unidentified individuals. Crownco is solely owned by Milan Puskar. Crownco Partnership is 50% owned by Crownco, Inc.

(Milan Puskar) and the remaining 50% is owned by Granco, which is a company owned by John Hardesty and other Hardesty family members.

Genesis argues that, despite its introduction of evidence at the administrative level which proved that Crownco, Inc. and Genesis are not "related parties" for purposes of severance tax assessment, the administrative law judge reached the opposite conclusion with no actual evidence to support its finding. In making its ruling, the administrative law judge reasoned as follows:

> It defies reality for one to believe that a sale between an entity which is thirty-four (34) percent owned by × and y [Genesis], to an entity which is in reality one hundred (100) percent owned by × and y, is in fact an arms length transaction. Coupled with this realization is the additional fact that Granco (Hardesty) is providing consulting services under a contract with Crownco, a Partnership (Hardesty and Puskar) due to his past experience dealing with Continental and the aforementioned coal supply sales contract.
>
> As a result of the pervasive business relationship that existed and continues to exist between the Petitioner [Genesis] and Crownco, Partnership, it is the DECISION of the State Tax Commissioner that the transaction(s) between the two are sales between related parties which must be revalued pursuant to 110. C.S.R. 13A, § 2(a)(6) et seq.

The reasoning employed by the administrative law judge in this case is sparse at best. Furthermore, upon dissection, the limited reasoning provided is not supported by the record in this case. The finding above references a sale between Genesis—the entity that is 34% owned by Messrs. Puskar and Hardesty—and "an entity which is in reality one hundred (100) percent owned" by those same entities (Puskar and Hardesty). In reaching his conclusion, the administrative

---

passive royalty interest." W.Va. R. *Taxation* 110 § 13A–2.14.

**5.** "Gross value" is determined "by the gross proceeds of sales in every instance in which a bona fide sale of such products is made at the point

where production ends, and whether sold at wholesale or retail." W.Va. R. *Taxation* 110 § 13A–2.7.

**6.** These proceedings involved Mohigan Mining Company.

law judge appears to be reading certain facts into the record of which this Court has no discernable evidence.

In stating that Genesis was selling coal at the initial stage of the sales chain described above to an entity owned by Messrs. Puskar and Hardesty, the administrative law judge must have been referring to the Crownco Partnership, since that partnership is comprised of two companies (Crownco, Inc. and Granco) which are essentially Milan Puskar and John Hardesty. The problem with this finding is that the tax assessment was against Genesis, Inc., and the coal sales at issue were between Genesis and Crownco, Inc., and not the Crownco Partnership. Consequently, in making his findings the administrative law judge apparently made an assumption that Genesis was selling coal to the Crownco Partnership and not to Crownco, Inc., which is solely owned by Milan Puskar.

While the leaps of logic and assumptions employed by the administrative law judge and the Tax Commissioner may be correct as far as the true parties involved in the underlying coal sale transactions, the record in this matter is devoid of any clear evidence or findings upon which to affirm these conclusions. Similarly, the circuit court's order lacks any factual findings, concluding only that the position taken by the Tax Commissioner was not arbitrary or capricious. As we explained above, part of our obligation in reviewing the rulings at issue includes an examination of whether the findings made at the administrative level are "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record." W.Va. Code § 29A–5–4(g)(5). That standard of review implicitly requires that to be upheld the findings made in an administrative proceeding must be supported by the evidence comprising the record in the case. Given the fairly undeveloped record and the parties' decision not to present oral argument to this Court, our review of this matter is severely constrained.

■ While adamant in its assertion that Genesis and Crownco "are clearly controlled, directly or indirectly, by the same persons— Milan Puskar and John Hardesty," the Tax Commissioner offers little evidence to prove this contention. To demonstrate the necessary "related parties" status, the Tax Commissioner relies on two arguments. First, the Tax Commissioner cites an unsigned West Virginia corporate tax return prepared on behalf of Genesis for 1994 that was admitted into evidence below. Based on Schedule S of that return, Mr. Hardesty was a 35% owner in Genesis. Combining Mr. Puskar's 25% ownership in Genesis and Mr. Hardesty's purported 35% ownership, the Tax Commissioner maintains that this 60% ownership by these two individuals is sufficient to demonstrate the requisite control necessary to establish "related parties" under this state's severance tax laws. There are several problems with this contention.

First, the amount of control that is required to invoke the "related parties" definition has never been identified by regulation or otherwise. While Genesis suggests that a minimum 50% common ownership in both corporations is necessary to have the amount of common ownership that may effectuate a "related parties" finding, the Tax Commissioner argues that the concept of control does not require actual stock ownership for purposes of applying the applicable severance tax regulations.[7] *See* W.Va. R. *Taxation* 110 § 13A–2a.6. Given the limited factual development of this matter, we do not believe that this case properly presents for this Court's full discussion the issue of the degree of control necessary to invoke the "related parties" regulation. *See id.* We note, however, that should the Tax Commissioner seek to have the amount of control specified that is necessary to invoke the "related parties" concept under the severance tax laws, then it may propose additional reg-

---

7. After recognizing that there are no federal tax counterparts to the severance tax at issue and that federal tax definitions are not binding on this state's application of its own tax laws, the Tax Commissioner nonetheless proceeds to discuss how the Internal Revenue Service defines a

"controlled group." For obvious reasons, this Court does not view such examples or definitions as controlling with regard to interpreting this state's regulatory provisions governing imposition and assessment of a severance tax.

ulatory language for adoption and promulgation.

The second reason why this Court does not find the Tax Commissioner's argument on the issue of control to be compelling is that the administrative law judge did not find that Mr. Hardesty had the 35% stock ownership in Genesis that the Tax Commissioner relies upon in making its argument. The decision issued by the administrative law judge in this case cites only a 9% ownership by Mr. Hardesty in Genesis and makes no reference to three trust agreements that Mr. Hardesty set up for his children.[8] This Court simply cannot read such a significant factual alteration into the record, as apparently suggested by the Tax Commissioner.[9]

The second argument upon which the Tax Commissioner relies in its attempt to prove control on the part of Messrs. Puskar and Hardesty is the lack of any formal agreement between Genesis and Crownco for the purpose of the coal selling arrangement. Conversely, Genesis argues that the lack of a written agreement does not evidence common control between the two entities. Under the existing regulations, the concept of control is defined with reference to either an oral or a written contract or lease. *See* W.Va. R. *Taxation* 110 § 13A–2.14. Consequently, we find no proof of control merely by virtue of the non-existence of a written sales agreement.

Upon our review of the sparse record before us, we simply cannot conclude that the evidence documents the conclusion reached by the administrative law judge that the sales between Genesis and Crownco[10] were between "related parties." W.Va. R. *Taxation* 110 § 13A–2.14. While we fully recognize the fact that the conclusion reached by the Tax Commissioner may be correct, we cannot uphold a ruling which permits excess severance taxes to be assessed absent sufficient proof that Genesis and Crownco are "related parties," as defined by the statute. *Id.* Only upon proper evidence demonstrating such status can this Court uphold an assessment of excess severance taxes as against Genesis or any other taxpayer. The absence of clear regulations defining the degree of control necessary to invoke the "related parties" status and the dearth of factual findings in this case leaves this Court with no choice but to overrule the circuit court and the Tax Commissioner on the assessment of excess severance taxes against Genesis for the subject time period.

### B.  Use Tax

In addition to challenging the excess severance tax assessment, Genesis objects to the Tax Commissioner's ruling requiring it to pay a use tax with regard to the sales chain of events above described. The Tax Commissioner's basis for assessing a use tax is its position that Continental is merely a sales agent for Genesis with regard to the final sale in the chain of sales that occurred between Continental and Mon Power. *See* W.Va. R. *Taxation* 110 § 15–88.1 (providing that commissions earned as commodity broker are subject to use tax). As support for its position, the Tax Commissioner looks to a

---

8.  These three trust agreements, which identify shares in the common stock of Genesis as the body of the trust, were entered into in 1992; had a five-year term of existence; and provided that Mr. Hardesty's children were potential secondary beneficiaries in the event of his death. The only benefit flowing directly to his children in the event of Mr. Hardesty's death was the income from the trust, as the body of the trust reverted to his estate.

9.  In so concluding, we do not mean to downplay the significance of the additional indirect ownership or control over Genesis stock that Mr. Hardesty may have, but merely to recognize that this Court is constrained to the factual findings made by the administrative law judge. Critically, the

record lacks any finding with regard to the stock holdings placed in trust for the benefit of Mr. Hardesty's children.

10.  We are further troubled by the fact that the finding of "related parties" made by the administrative law judge was between Genesis and Crownco Partnership and not between Genesis and Crownco, Inc., the apparent buyer of the coal subject to the severance tax at issue. In conducting our review of this matter, it quickly became apparent that both the litigators and the administrative decision makers referred somewhat loosely, and perhaps even incorrectly, to the parties involved at various stages of the transactions involved.

contractual agreement between Continental and Mohigan [11] under which Mohigan agreed to supply Continental with a certain amount of coal so Continental could meet its obligation of supplying coal to Mon Power. As referenced above, Crownco assumed the obligation of Mohigan to supply Continental with coal pursuant to the original 1982 agreement and various later amendments. Based on the use of the terminology "sales agent" in reference to Continental in the 1982 agreement, and Continental's deduction of a 10.5 % commission from the money it received in payment from Mon Power, the Tax Commissioner determined that no transfer of title [12] occurred at any stage of the outlined sales chain and, therefore, the only true sales transaction was between Genesis and Mon Power.

Given that it was Crownco and not Genesis who assumed the obligation of Mohigan and became obligated to supply coal to Mon Power pursuant to various agreements, and given that the Tax Commissioner's assessment of use tax against Genesis, rather than Crownco, appears to be connected to the Tax Commissioner's viewing of Genesis and Crownco as "related parties" or at least one and the same, we cannot determine what impact this Court's decision that the record does not support the conclusion that Genesis and Crownco are "related parties" will have on the assessment of the use tax. Consequently, we conclude that it is necessary to remand this matter to the circuit court [13] for reconsideration of the use tax issue in light of our ruling that the evidence does not demonstrate that Genesis and Crownco are "related parties" for purposes of assessing the excess severance tax.

Based on the foregoing, the decision of the Circuit Court of Monongalia County is hereby reversed, in part, and remanded, in part,

for further proceedings consistent with this opinion.

Reversed in part; Remanded in part.

---

**11.** This agreement was entered into in 1982.

**12.** The issue of whether a transfer of title took place at each stage of the sales chain is significant because under the regulations at issue a "sale" "includes any transfer of the ownership or title to the property ...." W.Va. R. *Taxation* 110 § 13A–2.15.

**13.** It is within the trial court's discretion to either entertain further argument and enter a ruling on the use tax issue or to remand this matter to the administrative tribunal for further consideration of the issue.